﻿Citation Nr: AXXXXXXXX
Decision Date: 12/17/18 Archive Date: 12/17/18

DOCKET NO. 180727-287
DATE: December 17, 2018
ORDER
Entitlement to an earlier effective date for service connection for status post myocardial infarction is denied.
Entitlement to a compensable rating for service-connected bilateral hearing loss is denied.
The Veteran’s petition to readjudicate the claim for service connection for chronic obstructive pulmonary disease (COPD), claimed as breathing issues is denied.
FINDINGS OF FACT
1. The Veteran served in the Republic of Vietnam and has a covered disease, i.e. status post myocardial infraction; he is a Nehmer class member.
2. Ischemic heart disease was added to the list of disease presumed to be related to herbicide exposure effective August 31, 2010. 
3. A June 2016 rating decision granted service connection for status post myocardial infraction based on the Veteran’s presumed exposure to herbicide agents; the November 20, 2015, effective date was based on the date the Veteran submitted his claim. 
4. The Veteran’s hearing loss was manifested by no worse than level II hearing in the right ear and level III hearing in the left ear. 
5. Evidence received since the February 2011 rating decision is not new and relevant to the issue of entitlement to service connection for COPD, claimed as breathing issues. 
CONCLUSIONS OF LAW
1. The criteria for an effective date earlier than November 24, 2015 for service connection for status post myocardial infarction have not been met. 38 U.S.C. § 5110 (2002); 38 C.F.R. § 3.816, 3.400 (2017).
2. The criteria for a compensable rating for bilateral hearing loss have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 4.85, 4.86, Diagnostic Code 6100 (2017). 
3. New and relevant evidence sufficient to readjudicate the claim for entitlement service connection for COPD, claimed as breathing issues has not been received. 38 U.S.C. §§ 101(35), 5108.
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.
The Veteran served on active duty from April 1964 to July 1968.
The Veteran selected the Higher-Level Review lane when he submitted the RAMP election. Accordingly, the May 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested an additional 90 days to submit evidence. See July 2018 RAMP Opt-In Election. The matter is before the Board now for appellate review. 
1. Earlier effective date claim
The Veteran contends that he is entitled to an earlier effective date for the grant of service connection for status post myocardial infraction. See June 2016 Notice of Disagreement (NOD). 
In general, the effective date for a grant of service connection and disability compensation is the day following separation from active military service or the date entitlement arose if the claim is received within one year after separation from service; otherwise, the effective date will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110; 38 C.F.R. § 3.400. 
Retroactive effective dates are allowed, to a certain extent, in cases where a grant or increase of compensation is awarded pursuant to a liberalizing law. 38 U.S.C. § 5110(g); 38 C.F.R. § 3.114(a). To be eligible for a retroactive payment under these provisions, the evidence must show that the claimant met all eligibility criteria for the liberalized benefit on the effective date of the liberalizing law or VA issue and that such eligibility existed continuously from that date to the date of claim or administrative determination of entitlement. See McCay v. Brown, 9 Vet. App. 183, 188 (1996), aff’d, 106 F.3d 1577, 1581 (Fed. Cir. 1997). 
VA has promulgated special rules for the effective dates for the grant of presumptive service connection based on exposure to herbicides, pursuant to orders of a United States District Court in the class action of Nehmer v. United States Department of Veterans Affairs. See 38 C.F.R. § 3.816; see also Nehmer v. United States Veterans Administration, 712 F. Supp. 1404 (N.D. Cal. 1989) (Nehmer I); Nehmer v. United States Veterans Administration, 32 F. Supp. 2d 1175 (N.D. Cal. 1999) (Nehmer II); Nehmer v. Veterans Administration of the Government of the United States, 284 F.3d 1158 (9th Cir. 2002) (Nehmer III).
A Nehmer class member is defined as a Vietnam veteran who has been diagnosed with a disorder presumptively-associated with herbicide exposure, to include ischemic heart disease. 
Certain effective dates apply if a Nehmer class member was denied compensation for such a disorder between September 25, 1985, and May 3, 1989; or if there was a claim for benefits pending before VA between May 3, 1989, and the effective date of the applicable liberalizing law. See 38 C.F.R. § 3.816(c)(1)-(3). However, if the requirements of 38 C.F.R. § 3.816(c)(1)-(2) are not met, the effective date shall be assigned according to 38 C.F.R. §§ 3.114 and 3.400. See 38 C.F.R. § 3.816(c)(4).
Under the above provisions for liberalizing laws, awards based on presumptive service connection established under the Agent Orange Act of 1991 can be made effective no earlier than the date VA issued the regulation authorizing the presumption. Id. Ischemic heart disease was included as a presumptive herbicide exposure related disease under 38 C.F.R. § 3.309(e), which was made effective by VA as of August 31, 2010.
A claim will be considered a claim for compensation for a particular covered herbicide disease if: (i) The claimant’s application and other supporting statements and submissions may reasonably be viewed, under the standards ordinarily governing compensation claims, as indicating an intent to apply for compensation for the covered herbicide disability; or (ii) VA issued a decision on the claim, between May 3, 1989 and the effective date of the statute or regulation establishing a presumption of service connection for the covered herbicide disease, in which VA denied compensation for a disease that reasonably may be construed as the same covered herbicide disease for which compensation has been awarded. 38 C.F.R. § 3.816(c)(2)(i), (ii).
Factual Background
The Veteran’s service treatment records (STRs) are silent for any complaints or diagnosis of a heart condition. See STR-Medical. His post-service private treatment records also show a normal heart examination in September 1986. See Presbyterian University Hospital Record. Additionally, the Veteran’s VA treatment records also showed regular rhythm and rate in March 2009. See VA Primary Care Note from March 2009, in CAPRI received in October 2010. 
In May 2011, the Veteran underwent a myocardial perfusion imaging test due to complaints of occasional chest pain. The test results showed fixed anterior wall defect with preserved ejection fraction. See May 2011 Addendum Note, in CAPRI received in March 2014. He was referred to cardiology. During the June 2011 VA Cardiology Consult, the Veteran’s electrocardiogram confirmed sinus bradycardia. See VA Cardiology Consult in CAPRI received in March 2014. He was assessed with coronary artery disease (CAD) and a left heart catherization was ordered. Id. In August 2011, following the left heart catherization, the VA cardiologist noted that the Veteran had normal coronary arteries, and diagnosed the Veteran with CAD. Id. 
The Veteran filed a claim for service connection for a heart condition on November 20, 2015. See November 2015 VA Form 21-526b. In a June 2016 rating decision, the Veteran was granted service connection for status post myocardial infraction and assigned a 10 percent disability rating effective November 20, 2015. The Veteran contends that an earlier effective date is warranted based on earlier diagnosis of myocardial infraction. 
Analysis
As an initial matter, the Veteran served in the country of Vietnam during the Vietnam War era and, therefore, is a “Vietnam veteran” as defined in the regulations. See 38 C.F.R. § 3.307 (a)(6). In addition, he has a “covered herbicide disease,” i.e., ischemic heart disease (CAD) within the meaning of 38 C.F.R. § 3.816 (b)(2). Accordingly, he is a Nehmer class member.
However, based on the special effective date provisions, the Veteran is not entitled to an earlier effective date. Specifically, the Veteran’s claim was received more than one year after his separation from military service; thus, the exception at 38 C.F.R. § 3.816 (c)(3) is not applicable. The record does not reflect that he was denied compensation for a heart disability between September 25, 1985, and May 3, 1989; therefore, the Veteran’s claim for an earlier effective date is not covered under 38 C.F.R. § 3.816 (c)(1). Similarly, the record does not indicate that the Veteran’s claim was denied between May 3, 1989 and the effective date of the statute or regulations establishing a presumption of service connection for the covered disease, which was August 31, 2010. Accordingly, 38 C.F.R. § 3.816(c)(2) is not applicable. Given that the evidence does not demonstrate that the aforementioned sections, (c)(1) and (c)(2), are satisfied, based on 38 C.F.R. § 3.816 (c)(4), the Veteran’s claim for an earlier effective date must be assigned pursuant to 38 C.F.R. §§ 3.114 and 3.400. 
Turning first to 38 C.F.R. § 3.114, in order for a claimant to be eligible for the one-year retroactive payment under this regulation, the evidence must show that the claimant met all the eligibility criteria of the liberalized benefit on the effective date of the liberalizing law and such eligibility existed continuously since that time. As already noted, IHD was added to the list of diseases presumed to be related to herbicide exposure on August 31, 2010. A review of the record, including the Veteran’s own statements, reflects that he was initially diagnosed with a heart disability in June 2011, which is after that liberalizing date. Thus, assignment of an earlier effective date under 38 C.F.R. § 3.114 is not warranted.
Turning, then, to 38 C.F.R. § 3.400, the Veteran has not asserted, and the claims file does not reflect, that he or an authorized representative submitted a formal or informal claim for service connection for a heart disability prior to the one received by VA on November 20, 2015. Instead, the Veteran appears to be seeking an earlier effective date for the grant of service connection for a heart disability based on the date on which he was diagnosed with that condition. As explained in detail below, evidence of a diagnosis of a disability is not filing a claim for that disability. 
Thus, the effective date of the award will be the later of the date such claim was received by VA or the date the disability arose. 
A review of the record does not reveal any document that could be interpreted as a claim for benefits for a “covered herbicide disease,” specifically relating to ischemic heart disease or CAD prior to November 20, 2015, and the Veteran has not claimed otherwise. Although, the record contains a December 2011 deferred rating which suggested that the Veteran may wish to file a claim for service connection for ischemic heart disease, there was no evidence that the Veteran filed or indicated an intent to file a claim prior to November 20, 2015. A claim for VA disability benefits generally requires an intent to seek benefits expressed in writing that identifies the particular benefits sought. DeLisio v. Shinseki, 25 Vet. App. 45, 53 (2011). In fact, the Veteran does not contend that he filed an earlier claim for service connection. Rather, his sole argument is that the effective date should be the date the heart condition was raised by the record. See June 2016 NOD. 
The Board also acknowledges his VA treatment records confirmed he was diagnosed with CAD in 2011. However, these records do not support the assignment of an earlier effective date because the mere presence of medical evidence does not establish intent on the part of the veteran to seek service connection for a condition. See Brannon v. West, 12 Vet. App. 32, 35 (1998); Lalonde v. West, 12 Vet. App. 377, 382 (1999) (where appellant had not been granted service connection, mere receipt of medical records could not be construed as informal claim).
Therefore, considering all relevant law and regulations, there is no provision under the law to assign any earlier effective date for the grant of service connection for a heart disability prior to the November 20, 2015, date of receipt of the claim. Accordingly, the Board must deny the claim for entitlement to an earlier effective date for service connection for a heart condition. As the preponderance of the evidence is against this claim, under these circumstances the benefit-of-the-doubt doctrine does not apply. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

2. Evaluation of bilateral hearing loss, which is currently 0 percent disabling, from September 9, 2016 to April 20, 2018 
The Veteran filed an increased rating claim seeking a compensable rating for bilateral hearing loss disabilities. See September 2016 VA Form 21-526b. 
Disability ratings are determined by evaluating the extent to which a Veteran’s service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Rating Schedule). 38 U.S.C. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10.
If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower evaluation will be assigned. 38 C.F.R. § 4.7. The Veteran’s entire history is to be considered when making disability evaluations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995).
“Staged” ratings are appropriate for any rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007). Here, the Veteran is appealing the original assignment of a disability evaluation following the award of service connection for his bilateral hearing loss. Thus, it is not the present level of disability which is of primary importance, but rather the entire period is to be considered to ensure that consideration is given to the possibility of staged ratings; that is, separate ratings for separate periods of time based on the facts found. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).
Evaluations of bilateral defective hearing range from noncompensable to 100 percent based on organic impairment of hearing acuity as measured by the results of controlled speech discrimination tests together with the average hearing threshold level measured by pure tone audiometry tests in the frequencies of 1000, 2000, 3000, and 4000 cycles per second (Hertz). To evaluate the degree of disability for bilateral service-connected defective hearing, the schedule establishes 11 auditory hearing acuity levels designated from Level I (for essentially normal hearing acuity) through Level XI (for profound deafness). 38 C.F.R. § 4.85, Tables VI and VII, DC 6100. Disability ratings for hearing loss are derived from a mechanical application of the rating schedule to the numeric designations resulting from audiometric testing. See Lendenmann v. Principi, 3 Vet. App. 345 (1992). The evaluations derived from the schedule are intended to make allowance for improvement by hearing aids. 38 C.F.R. § 4.85, DC 6100.
Exceptional patterns of hearing impairment are to be evaluated in accordance with the provisions of 38 C.F.R. § 4.86. That regulation states:
(a) When the pure tone threshold at each of the four specified frequencies (1000, 2000, 3000 and 4000 Hertz) is 55 decibels or more, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIa, whichever results in the higher numeral. Each ear will be evaluated separately.
(b) When the pure tone threshold is 30 decibels or less at 1000 Hertz, and 70 decibels or more at 2000 Hertz, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIa, whichever results in the higher numeral. That numeral will then be elevated to the next higher Roman numeral. Each ear will be evaluated separately.
An examination for hearing impairment for VA purposes must be conducted by a state-licensed audiologist and must include a controlled speech discrimination test (Maryland CNC) and a pure tone audiometry test. 38 C.F.R. § 4.85(a).
Factual Background
The Veteran was granted service connection for bilateral hearing loss and assigned a non-compensable disability rating in a March 2016 rating decision. As noted above, the Veteran filed an increased rating claim for his bilateral hearing loss disabilities in September 2016. 
The Veteran was provided a VA examination in connection with his claim in December 2016. See VA Hearing Loss and Tinnitus DBQ. The Veteran was assessed with sensorineural hearing loss. The audiogram, reflected pure tone thresholds, in decibels, as follows:
 
 HERTZ 
 500 1000 2000 3000 4000
RIGHT 40 40 35 40 65
LEFT 40 40 35 70 100
 
Speech audiometry revealed speech recognition ability of 84 percent in the right ear and of 86 in the left ear. Id. The pure tone threshold average was 45 decibels in the right ear and 61.25 decibels in the left ear.

Analysis
Applying Table VI of the rating schedule, the results of the December 2016 audiogram revealed that the Veteran had Level II hearing in the right ear and Level III hearing in the left ear. Based on Table VII, this result corresponds to a noncompensable rating. See 38 C.F.R. § 4.85. 
Upon review, the audiological examination of record indicates findings corresponding to no higher than a noncompensable rating. There is no additional competent evidence in the record that would suggest that the Veteran’s hearing loss is severe enough to warrant a higher rating. The Board has no reason to doubt the validity of the VA audiometric testing in this case.
Moreover, the VA examination does not demonstrate an exceptional pattern of hearing impairment, as the Veteran did not have pure tone thresholds of 55 decibels or more at each of the frequencies of 1000, 2000, 3000, and 4000 Hertz, or a pure tone threshold of 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz. 38 C.F.R. § 4.86(a), (b). Additionally, there is no examiner certification that the use of speech discrimination testing was not appropriate due to factors such as language difficulties, inconsistent scores, etc. As such, there is no basis to alternatively rate this claim under Table VIA. See 38 C.F.R. § 4.85(c).
The Veteran’s subjective reports of hearing impairment have been considered. See Layno v. Brown, 6 Vet. App. 465, 469-70 (1994). However, a review of his lay statements gives no indication of specific symptoms or a particular degree of impairment that would justify a compensable rating. Moreover, the Board is bound to apply the VA rating schedule, where the assignment of disability ratings for hearing impairment is derived from a mechanical formula. Thus, while laypersons are competent to report general symptoms such as hearing loss, the specific audiological findings from the audiological examination from December 2016 is more probative of the severity of the Veteran’s hearing loss disability for VA purposes. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (2007). 
Accordingly, the Veteran’s claim for a compensable rating for bilateral hearing loss is denied. 
3. Whether new and relevant evidence has been submitted
Pursuant to the AMA, the provision (38 U.S.C. § 5108) pertaining to readjudicating previously denied claims was amended, and went into effect on August 23, 2017. See 131 Stat. 1105 (2017). This provision replaces the new and material standard for reopening claims and applies to supplemental claims. “If new and relevant evidence is presented or secured with respect to a supplemental claim, the Secretary shall readjudicate the claim taking into consideration all of the evidence of record.” 38 U.S.C. § 5108(a). 
Here, the Veteran’s claim for entitlement to service connection for COPD was denied in a February 2011 rating decision. The claim was denied because there was no evidence that his COPD was caused or related to his active service. The Veteran filed a notice of disagreement (NOD) in September 2011 and the VA issued a Statement of the Case in December 2011. However, the Veteran failed to perfect his appeal by filing a VA Form 9. Thus, this decision became final. 
Evidence received since the February 2011 rating decision includes VA treatment records, a VA Form 21-526b, Veterans Supplemental claim, and the Veteran’s lay statements. 
The Board finds that the evidence is new, because it was not previously before the agency decision makers. However, the evidence is not relevant because these records do not relate to the issues of an in-service occurrence or nexus. Instead they confirm that the Veteran has a diagnosis of COPD, which has already been established. Accordingly, new and relevant evidence has not been received in order to readjudicate the Veteran’s claim for entitlement to service connection for COPD. 
Thus, the Veteran’s petition to readjudicate his claim for entitlement to service connection for COPD is denied. 

 
YVETTE R. WHITE
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD G. Lilly, Associate Counsel